**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CRIMINAL ACTION NO. 3:18-CR-00125-JRW**

**UNITED STATES OF AMERICA**                                                                                      **PLAINTIFF**

**v.**

**ROBERT F. MADDOX**                                                                                                        **DEFENDANTS**
**and JAMES K. KINCAID**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**ON MOTION TO SUPPRESS**

      This matter is before the Court on Defendant Robert F. Maddox's motion to suppress, which the Court allowed co-Defendant James K. Kincaid to adopt [DN 19, 57, 63]. The United States filed a response and supplemental response in opposition to Maddox's motion to suppress [DN 24, 50], and Maddox filed a reply [DN 55]. The Court ordered Maddox and the United States to file additional briefs and a joint stipulation of facts. [DN 60]. The briefs are at DN 61 and 62, and the stipulation is at DN 64. The Court referred the matter to the undersigned Magistrate Judge "for a hearing, if necessary, and for findings of fact, conclusions of law, and recommendation." [DN 49].

      In their joint stipulation of facts, Maddox and the United States agree that "[t]he facts set forth in the affidavit for the search warrant are accurate." [DN 64]. According to the parties, the Court is called upon to determine "whether those facts constitute probable cause for the issuance of the search warrant for [Maddox's Parents'] Residence" at 135 Fern Lee Circle, Bardstown, Kentucky. [*Id.*].

      Because it is a close question whether the facts set forth in the affidavit constituted probable cause for issuance of the search warrant, but it is clear the officer who executed the warrant relied on the warrant in good faith, the RECOMMENDATION will be that the Court DENY Maddox's motion to suppress [DN 19].

**Background Facts[1]**

According to the Joint Stipulation of Facts of Maddox and the United States:

1. On or about February 7, 2018, state and local law enforcement officers executed … state search warrants [on] 144 Fern Lee Circle, Bardstown, Ky (Maddox Residence) and 135 Fern Lee Circle, Bardstown, Kentucky (Parents' Residence). The Search Warrant issued for the Parents' Residence authorized law enforcement to search the parents' home, several named individuals (other than Maddox), and multiple listed vehicles (belonging to people other than Maddox).

2. Maddox lives across the street from his parents. Maddox has a room at his Parents' Residence where he stays on occasion when he is needed to help his parents and where his minor children stay when they are visiting Maddox from their mother who has primary custody.         [DN 64].

Because Maddox has a room at his parents' residence, the United States concedes that Maddox has standing[2] to move to suppress the evidence discovered at his parents' residence. [DN 62 at 2].

The bulk of the incriminating evidence Maddox seeks to suppress was discovered in his parents' house (as opposed to being discovered in one of the vehicles listed or persons named in the search warrant). [DN 61 at 1-2]. The incriminating evidence included cocaine, marijuana, digital scales, baggies, cash, and handguns. [*Id.*]. The evidence was found in the "bedroom of [Maddox's co-Defendant] Kenny Kincaid," in the "bedroom next to Kenny's," and in the "master bedroom." [DN 61 at 2]. Additionally, authorities discovered $7,161 cash, a vacuum sealer, and other materials in an "unidentified location." [*Id.*].

At the February 18, 2020, telephonic status conference, Defendant Kincaid argued that he has standing to object to the search because he (like Maddox) lived at Maddox's parents' residence at the time of the search. The United States agreed that Kincaid lived at Maddox's parents' residence and stated

---

[1] This report focuses on the facts relevant to the merits of Maddox's motion to suppress. The procedural history of this case, including the reasons for the delay in submitting the present report, is set forth in the Order at DN 60 and will not be repeated here.

[2] "Standing" in the present context is a shorthand reference for the threshold determination under the Fourth Amendment of whether the defendant has a legitimate expectation of privacy in the place searched or the items seized. *United States v. Garcia*, 496 F.3d 495, 503 n.3 (6th Cir. 2007).

that, in the event Maddox prevails on his motion to suppress, it does not intend to challenge Kincaid's standing to object to the search.

## Legal Standards

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *United States v. Malone*, No. 5:19-CR-22-TBR, 2020 WL 132521, at *1 (W.D. Ky. Jan. 10, 2020) (citing U.S. Const. amend. IV). Consistent with this principle, constitutional jurisprudence provides "the basic rule that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions." *Id.* (quoting *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). To further protect individuals' privacy interests, the Fourth Amendment demands that search warrants, when issued, are only provided upon a showing of probable cause. *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

In reviewing the sufficiency of the evidence supporting probable cause, a court is "limited to examining the information contained within the four corners of the affidavit," in light of the totality of the circumstances. *Id.* (quoting *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009)).

Probable cause justifying the issuance of such a search warrant exists where, taking the totality of the circumstances, the affidavit supporting the warrant provides the issuing judge with a substantial basis to believe "there is a fair probability that contraband or evidence of illegal activity will be found in a particular place." *Id.* (quoting *Gates*, 462 U.S. at 238). Moreover, in order "[t]o justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place." *Id.* (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). This requires "a nexus between the place to be searched and the evidence sought." *Id.*

The underlying affidavit that supports the search warrant must "contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the

warrant." *Id.* (quoting *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999)). "The supporting facts in an affidavit need not be based on direct knowledge and observations of the affiant, but may come from hearsay information supplied by an informant." *Id.*

In order to deter future violations of the Fourth Amendment, the typical remedy for searches made with a defective warrant is suppression. *Id.* (citing *United States v. Woodbury*, 511 F.3d 93, 99 (1st Cir. 2007)). Notably though, suppression is not always warranted and, depending upon the circumstances, evidence may be saved from suppression where an officer acts in good faith in executing an otherwise defective warrant. *Id.* (citing *United States v. Leon*, 468 U.S. 897 (1984)). This means that, in situations where "evidence [is] obtained in objectively reasonable reliance on a subsequently invalidated search warrant," the "marginal or nonexistent benefits [of suppression] ... cannot justify the substantial costs of exclusion." *Id.* (quoting *Leon*, 468 U.S. at 922). In such a case, although probable cause is lacking, the fruits of the search need not be suppressed. *Id.*

**The affidavit cited five items of probable cause.**

Detective James Willliamson (Det. Williamson) submitted an affidavit in support of the search of Maddox's parents' residence for evidence of drug trafficking, and the affidavit cited five items of probable cause. [Affidavit, DN 50-3]. First, Maddox had several prior narcotics-related convictions, and detectives conducted four controlled purchases of cocaine at Maddox's residence, using a reliable, confidential informant -- the latest purchase having occurred within 72 hours. [*Id.* at 3]. Second, the informant advised Det. Williamson that Maddox "is back and forth between his residence and his father's residence." [*Id.*]. Third, "[d]uring at least one of these controlled purchases [Maddox] came from [his parents' residence] before meeting the informant at his residence." [*Id.*]. "When [Maddox] arrived back at his residence he had the cocaine on his person." [*Id.*]. Fourth, a check of Maddox's license revealed his "current" address and the fact that his "previous" address was his father's house. [*Id.*]. Fifth, "detectives believe there is a strong possibility that [Maddox] keeps narcotics or proceeds of narcotics trafficking at his father's

4

residence." [*Id.*]. Det. Williamson based this belief on his "experience and training as a narcotics detective." [*Id.*].

**It is a close question whether the affidavit provided probable cause for the search warrant.**

In support of his motion to suppress, Maddox repeatedly cites the Sixth Circuit opinion in *United States v. Christian*, 893 F.3d 846, 853 (6th Cir. 2018) (hereinafter "*Christian I*"). (DN 55, 61.) The Sixth Circuit, however, subsequently vacated that opinion. *United States v. Christian*, 925 F.3d 305 (6th Cir. 2019) (hereinafter "*Christian II*"). *Christian II* explained that *Christian I* fell into the trap of analyzing each item of evidence in a hyper-technical, myopic manner. *Christian II*, 925 F.3d at 311. In relying on *Christian I*, Maddox invites this Court to fall into the same trap.

Item 1 (above) is that detectives conducted four (including one recent) controlled purchases of cocaine at Maddox's residence. [Affidavit, DN 50-3 at 3]. While this provided probable cause for the search warrant issued to search Maddox's residence, it alone did not provide probable cause to search Maddox's parents' residence.

Item 2 is that Maddox was "back and forth between his residence and his father's residence." [Affidavit, DN 50-3 at 3]. Ordinarily, "it is speculation to infer that a drug trafficker keeps evidence of that activity at his father's house across the street, even if he spends a lot of time there." *United States v. Trujillo*, No. 03-40134-01-RDR, 2004 WL 813645, at *5 (D. Kan. Mar. 8, 2004). There must be some evidence the drug trafficker, in fact, does keep such evidence at his father's house. *Id.* at *4. Otherwise, a search of the father's house would be permissible based on mere "propinquity to the location of illegal activity or to persons engaged in illegal activity." *Id.* (citing *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). Unlike in *Trujillo*, there is more than speculation in this case. Whereas, in *Trujillo*, general surveillance indicated that the son spent a lot of time at his father's house; in this case, the informant indicated Maddox "is back and forth between his residence and his father's residence" prior to drug purchases. [Affidavit, DN 50-3 at 3].

5

Item 3 is that, during "at least one" controlled purchase, Maddox arrived at his residence from his father's residence with the cocaine on his person. [Affidavit, DN 50-3 at 3]. While it is somewhat speculative to infer that Maddox obtained the cocaine from his father's house, in *United States v. Christian*, 925 F.3d 305 (6th Cir. 2019), the Sixth Circuit held that possession of contraband by a single individual that could be traced to the searched residence, in combination with other factors, resulted in probable cause for the search.[3]

Item 4 is that a check of Maddox's license revealed his "current" address and the fact that his "previous" address was his father's address. [Affidavit, DN 50-3 at 3]. While it is somewhat speculative to infer that evidence of drug trafficking would be found where Maddox no longer lived, the fact that the previous address was his parents' residence, across the street, made it more likely such evidence would be there.[4]

Item 5 is that, based on his "experience and training as a narcotics detective," Det. Williamson believed "there is a strong possibility that [Maddox] keeps narcotics or proceeds of narcotics trafficking at his father's residence." [Affidavit, DN 50-3 at 3]. The Sixth Circuit recognizes that "in the case of drug dealers, evidence is likely to be found where the dealers reside." *United States v. Frazier*, 423 F.3d 526, 537 (6th Cir. 2005). In light of *Frazier*, an affidavit containing evidence of drug trafficking "combined with the affiant-officer's experience that drug dealers keep evidence of dealing at their residence" establishes probable cause for the issuance of a warrant to search that residence. *United States v. Goward*, 188 F. App'x 355, 358 (6th Cir. 2006) (citing *Frazier*). While the Court finds no authority for the proposition that,

---

[3] Specifically, in *Christian*, an individual (Thomas) was seen walking away from Christian's residence. After Thomas drove away, the officers initiated a traffic stop, which resulted in discovery of heroin inside Thomas's car. Due to the recent connection between heroin and Christian's residence (via Thomas), there was probable cause to search Christian's residence.

[4] As noted above, this Court is "limited to examining the information contained within the four corners of the affidavit." *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009). Therefore, the Court disregards the stipulated fact that Maddox "has a room at his Parents' Residence where he stays on occasion when he is needed to help his parents and where his minor children stay when they are visiting [Maddox] from their mother who has primary custody." [DN 64.]

in the case of drug dealers, evidence of drug trafficking is likely to be found at a previous address or the address of the dealer's parents, the fact remains "an officer's 'training and experience' may be considered in determining probable cause." *United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994) (citations omitted).

While all five items are susceptible to innocent explanation, it does not necessarily follow that the affidavit failed to provide probable cause for the search. This is because, when it comes to probable cause, "the whole is often greater than the sum of its parts -- especially when the parts are viewed in isolation." *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) (quoting *District of Columbia v. Wesby*, 138 S.Ct. 577, 588 (2018). Accordingly, courts are warned not to engage in "hyper-technical," "line-by-line scrutiny" of affidavits. *Id.* (quoting *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004)). "[T]his kind of divide-and-conquer approach is improper" because a "factor viewed in isolation is often more readily susceptible to an innocent explanation than one viewed as part of a totality." *Id.* (quoting *Wesby*, 138 S.Ct. at 589).

In this case, it is simply a close question whether the affidavit provided probable cause for the search warrant. The affidavit provided probable cause that Maddox engaged in drug trafficking, but it is unclear whether it provided "a nexus between the place to be searched [i.e., Maddox's parents' house] and the evidence sought [i.e., evidence of drug trafficking]." *United States v. Malone*, No. 5:19-CR-22-TBR, 2020 WL 132521, at *1 (W.D. Ky. Jan. 10, 2020) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). If the affidavit had included the now-stipulated fact that "Maddox has a room at his Parents' Residence where he stays on occasion when he is needed to help his parents and where his minor children stay when they are visiting Maddox from their mother who has primary custody," [DN 64], the nexus would be clear. However, in reviewing the sufficiency of the evidence supporting probable cause, the Court is "limited to examining the information contained within the four corners of the affidavit," in light of the totality of the circumstances. *Id.* (quoting *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir.

2009)). After limiting the Court's review solely to the totality of the affidavit's contents, it still remains unclear whether a nexus exists between the location to be searched and the evidence sought.

## The Good-Faith Exception

Even if the affidavit did not provide probable cause for the search warrant, suppression is inappropriate in light of the good-faith exception to the exclusionary rule. The test for good-faith reliance on a search warrant is an objective one. *United States v. Leon*, 468 U.S. 897, 919 (1984). This has two implications. First, the focus is not on the subjective good-faith of either the affiant or the executing officer. Rather, "[i]t is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination." *Id.* at 923. Second, in the Sixth Circuit, the "determination of good-faith reliance, like a determination of probable cause, must be bound by the four corners of the affidavit." *United States v. Laughton*, 409 F.3d 744, 751 (6th Cir. 2005). In other words, "the good faith exception to the exclusionary rule does not permit consideration of information known to a police officer, but not included in the affidavit, in determining whether an objectively reasonable officer would have relied on the warrant." *Id.* at 752.

*United States v. Leon*, 468 U.S. 897 (1984) describes four situations where an officer's reliance on an invalid warrant cannot be considered objectively reasonable: (1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit"; (2) "where the issuing magistrate wholly abandoned his judicial role"; (3) when the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'" (quoting *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975)); and (4) when a warrant is "so facially deficient -- i.e., in failing to particularize the place to be searched or the things to be seized -- that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923. In this case, only the third situation could arguably apply.

8

As explained above, the present case presents a close question of whether the affidavit provided probable cause for the search warrant. Where (as here) a reviewing court struggles in hindsight to say whether an affidavit provided probable cause, it is unlikely that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence [in real time] entirely unreasonable." *Leon*, 468 U.S. at 923. Where the sufficiency of an officer's affidavit "is a close question … the *Leon* good-faith exception should generally apply." *United States v. Runyon*, No. 19-1108, 2019 WL 6321307, at *3 (6th Cir. Nov. 26, 2019) (citing *United States v. McCraven*, 401 F.3d 693, 698 (6th Cir. 2005); and *United States v. White*, 874 F.3d 490, 501 (6th Cir. 2017)). The facts of this case indicate the general rule should apply.

The same conclusion of applicability of the good-faith exception to the facts of this case is supported by *United States v. Christian*, 925 F.3d 305 (6th Cir. 2019). According to *Christian*, an affidavit that is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *Leon*, 468 U.S. at 923, may be described as "bare bones." *Id.* at 311.

Contrary to Maddox's argument [DN 55], the affidavit was not "bare bones." That label is reserved for an affidavit that merely "states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Christian*, 925 F.3d at 312 (quoting *United States v. Washington*, 380 F.3d 236, 241 n.4 (6th Cir. 2004)). To be considered bare bones, an affidavit must be "so lacking in indicia of probable cause" as to make an officer's "belief in its existence [] objectively unreasonable." *Id.* (quoting *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005)). Examples of bare bones affidavits are statements that the affiant "has cause to suspect and does believe" that contraband liquor is at a certain place (*Nathanson v. United States*, 290 U.S. 41 (1933)) or that the affiant has "received reliable information from a credible person and believe[s]" that heroin is at a certain place (*Aguilar v. Texas*, 378 U.S. 108 (1964). *Id.* at 312-13. An affidavit need only present "some connection, regardless of how remote it may have been," or, in other words, establish a "minimally sufficient nexus between the illegal activity and the place to be searched," to avoid the bare-bones

9

designation and thus be one upon which an officer can rely in good faith. *Id.* at 313 (quoting *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017) and *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016)).

In this case, as in *Christian*, "[a]lthough one can split hairs with the affidavit in this case, it is impossible to deny that it contains factual allegations, not just suspicions or conclusions." *Id.* "Importantly, each factual allegation, regardless of any infirmities, at least purports to link [Maddox] to drug trafficking" at his parents' residence, across the street. *Id.*

## RECOMMENDATION

Because it is a close question whether the facts set forth in the affidavit constituted probable cause for issuance of the search warrant, but it is clear the officer who executed the warrant relied on the warrant in good faith, the Magistrate Judge RECOMMENDS that the Court DENY Maddox's Motion to Suppress [DN 19].

February 28, 2020

**Lanny King, Magistrate Judge**
**United States District Court**

## NOTICE

Therefore, under the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 474 U.S. 140, 147 (1985).

February 28, 2020

**Lanny King, Magistrate Judge**
**United States District Court**